UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 11-20551

ADELFO PAMATMAT (D-18),

    Defendant.
                                                     /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
ALLEGED INCULPATORY STATEMENTS**

Now before the court is Defendant Adelfo Pamatmat's December 29, 2014 Motion to Suppress Alleged Inculpatory Statements of Defendant, in which Pamatmat requests that the court suppress (1) alleged inculpatory statements made by Pamatmat and (2) an Application to Intercept Wire and Electronic Communications, Drug Enforcement Administration ("DEA") Agent Swain's Affidavit filed in support of the application, and any evidence uncovered as a result of the wiretap sought through the application.  (Dkt. # 909, Pg. ID 4067.)  Both parties requested a hearing on whether Pamatmat made the alleged inculpatory statements and, if so, whether they were made after he was advised of his *Miranda* rights and signed a written waiver.  (Dkt. # 909, Pg. ID 4067; Dkt. # 943, Pg. ID 4352.)  A hearing was held on April 8, 2015.  For the reasons stated on the record and below, Pamatmat's motion will be denied.

**I. BACKGROUND**

On December 2, 2010, the DEA conducted a search of Pamatmat's residence. According to the affidavit submitted by DEA Agent Swain in support of the DEA's

Application to Intercept Wire and Electronic Communications and the DEA's Report of Investigation, dated December 6, 2010, Pamatmat "gave statements to law enforcement after receiving, understanding, and waiving his Miranda warnings." (Dkt. # 909-2, Pg. ID 4088.)  In particular, Agent Swain's affidavit states:

> [Pamatmat] told agents that he uses telephone number 248-497-0687 to communicate with associates.  Since 2007, [Pamatmat] stated he was involved with fraudulent medical companies conducting home exams and knowingly issuing controlled substance prescriptions, without medical justification, that were utilized by the patient recruiters who divert controlled substances for illicit sale. [Pamatmat] also admitted to providing the fraudulent medical company with pre-signed prescriptions.  He also admitted to signing patient charts and blank prescriptions for [a confidential information].

(*Id.*)

Pamatmat contends that these statements "are false and intentional misrepresentations," and that he "never made any inculpatory statements or a confession of any kind to the DEA during the search of his residence on December 2, 2010." (Dkt. # 909, Pg. ID 4068.)

The government filed the Application to Intercept Wire and Electronic Communications on June 7, 2011.  The application sought "authorization to intercept wire and electronic communications, to include SMS content, audio and text messages" of Pamatmat and others.  Judge Bernard Friedman of the Eastern District of Michigan issued an order on June 7, 2011 granting the DEA authority to intercept wire and electronic communications of Pamatmat, as requested in the DEA's application.

The court held a hearing on Pamatmat's Motion to Suppress on April 8, 2015 at which the court heard testimony from Pamatmat and three DEA agents—Agent Swain,

Task Force Agent Patrick Francis DeBottis, and Special Agent Mark Gogan—who participated in December 2, 2010 search of Pamatmat's residence.

## I. STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). "There is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)); *see United States v. Johnson*, 645 F.2d 865, 867 (10th Cir. 1981) ("[A]ffidavits in support of an application for a wiretap order, as well as affidavits in support of a search warrant, are to be read in a practical and commonsense manner rather than hypertechnically.").

"An order authorizing or approving a wiretap must be based on a finding of sufficient probable cause to issue the wiretap." *United States v. Talbert*, 706 F.2d 464, 467 (4th Cir. 1983). To find probable cause justifying a wiretap, "[c]ertainty is not

required, but rather a fair probability and something more than a mere suspicion." *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011). "Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, 'great deference' is normally paid to the determination of an issuing judge." *Alfano*, 838 F.2d at 162. "[T]he fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant." *Id.* The court will disturb a magistrate's determination that a wiretap should be approved "only if [his discretion is] arbitrarily exercised." *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983) (per curiam).

> In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held:
>
> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56. "In order to obtain a [*Franks*] hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit," *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002), and that "the exclusion of the allegedly false statement . . . results in a lack of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). It is the defendant's burden to "specifically point to the

4

disputed portions of the challenged affidavit, and . . . support these charges with an offer of proof." *Stewart*, 306 F.3d at 304. "If at the hearing, the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included a false statement in the affidavit, then any evidence and fruits of the search would be excluded." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003).

Meanwhile, it is the government's burden to prove by a preponderance of the evidence that a confession was voluntarily provided. *Cf. United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) ("When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary.").

### III. DISCUSSION

#### A. Pamatmat's Inculpatory Statements

According to Agent Swain's affidavit and the April 8, 2015 testimony of Agent Swain and Agent DeBottis, Pamatmat made at least the following inculpatory statements, all summarized in Agent Swain's affidavit:

> [Pamatmat] told agents that he uses telephone number 248-497-0687 to communicate with associates. Since 2007, [Pamatmat] stated he was involved with fraudulent medical companies conducting home exams and knowingly issuing controlled substance prescriptions, without medical justification, that were utilized by the patient recruiters who divert controlled substances for illicit sale. [Pamatmat] also admitted to providing the fraudulent medical company with pre-signed prescriptions. He also admitted to signing patient charts and blank prescriptions for [a confidential information].

(Dkt. # 909-2, Pg. ID 4088.)

5

Agent Swain and Agent DeBottis testified that Pamatmat made these statements during an approximately forty-five minute interview conducted by Agent Swain and Agent DeBottis while sitting in Pamatmat's kitchen on December 2, 2010. Pamatmat testified at the April 8, 2015 hearing that he had a "conversation" with the agents while sitting in his kitchen on December 2, 2010, but he denied having made any of the inculpatory statements alleged by the agents. Pamatmat also confirmed that he had signed the written *Miranda* waiver and that the statements contained in the waiver were true at the time he signed the waiver. Namely, Pamatmat testified that it is true that, at the time he signed the waiver, he had read the statement of his rights, understood the rights, did not want a lawyer, and had not received any promises, threats, or coercion. Pamatmat contends, however, that he signed the waiver after, not before the "conversation" with Agent Swain and Agent DeBottis; both agents testified that he had signed it before he made the inculpatory statements, the handcuffs having been removed. The Miranda waiver is dated December 2, 2010 at 9:15 AM, and, according to Pamatmat and the agents, most or all of the interview occurred after 9:15 AM.

Additionally, Pamatmat testified that, when he arrived at his house on December 2, 2010, an agent grabbed him and "pulled [him]" out of his car. He stated that he had no recollection of who the agent was, but clarified that the agent was "not here." Meanwhile, in his December 23, 2014 affidavit, Pamatmat stated that "Agent Swain forcibly pulled me from my car." (Dkt. # 909-4, Pg. ID 4118.) Agent Swain was sitting in the court room, and had previously testified about the events of December 2, 2010, when Pamatmat stated that the agent who grabbed him out of his car was "not here."

6

As the court stated on the record, the court finds the three testifying DEA agents substantially credible and finds Pamatmat substantially not credible. The agents corroborated each others' testimony, and their description of events provides the most likely explanation for how the DEA acquired the extremely detailed information related to Pamatmat contained in the DEA's December 6, 2010 Report of Investigation. (Gov't Ex. 1, Hr'g, Apr. 8, 2015.)[1] Meanwhile, Pamatmat's testimony and affidavit are inconsistent regarding how he was "pulled" from his vehicle, and his description of the interview with the DEA agents as a "conversation" strongly suggests that he made statements of some sort to the agents. Accordingly, the court finds that both the existence and the voluntariness of Pamatmat's alleged statements are supported by a preponderance of the evidence. A strong preponderance of the evidence demonstrates that Pamatmat waived his *Miranda* rights prior to making the statements and that the statements were made voluntarily.

**B. The Search Warrant**

Pamatmat requests that the court suppress the contents of communications intercepted as a result of the wiretap pursuant to 18 U.S.C. § 2518(10)(a). Pamatmat insists that Agent Swain's affidavit contains false statements and material omissions. He first argues that Agent Swain's affidavit is misleading because it discusses Pamatmat's aforementioned inculpatory statements from December 2, 2010. As

---

[1] The court raised a final question for defendant's counsel at the conclusion of his closing remarks: the court challenged counsel to explain where all the two pages of details about Pamatmat's activities related in the DEA 6 report came from, if not directly from Pamatmat, as the report averred. Counsel responded to the question only after prodding, and was unable to offer a cogent alternative explanation for the source of such details.

discussed above, Pamatmat has failed to demonstrate by a preponderance of the evidence that the statements contained in Agent Swain's affidavit pertaining to Pamatmat inculpatory statements were false.

Second, Pamatmat argues that the affidavit omits material information, rendering the affidavit misleading. In particular, he identifies the following alleged omissions: (1) the affidavit states the exact number of phone calls between (248) 497-0687 and "Target Telephone 1," but it omits any mention that the DEA conducted a search of Pamatmat's cell phone or call logs in order to obtain this information; (2) while stating that the telephone number (248) 952-7354 was "subscribed" to Pamatmat and "in contact" with "Target Telephone 1," the affidavit did not disclose that the phone was not 'utilized' by Dr. Pamatmat;" (3) the affidavit did not disclose that "this number . . . belonged to someone that had absolutely nothing to do with the government's investigation and warrant request," namely Pamatat's girlfriend Barbara Szkop; and (4) the affidavit did not inform the magistrate that the DEA "stopped Ms. Szkop in her vehicle while she was driving her minor daughter to school, seized her cell phone, and forced her to follow the DEA to retrieve the cell phone from them." (Dkt. # 909, Pg. ID 4071-76.)

Even assuming Pamatmat's alleged omissions are true, such omissions would not render the Order Authorizing the Interception of Wire and Electronic Communications infirm. "[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*,

8

134 F.3d 809, 816 (6th Cir. 1998). Under *Franks*, a defendant must not only make a substantial preliminary showing that an affiant's omissions amounted to "a 'deliberate falsehood' or 'reckless disregard for the truth,'" *id.* (quoting *Franks*, 438 U.S. at 171), he must also establish that the omissions were "critical to the finding of probable cause." *Id.*

Here, the application and supporting affidavit contains substantial evidence supporting a finding of probable cause as to Pamatmat. The affidavit discusses, *inter alia*, Pamatmat's inculpatory statements, subpoenaed telephone records from AT&T, and controlled purchases of prescriptions requesting the dispensing of Schedule II controlled substances signed by Pamatmat. The fact that the affidavit may have omitted discussion of an alleged search of Pamatmat's cell phone or call logs and Pamatmat's and his girlfriend's usage of a telephone number that was subscribed to Pamatmat were not critical for a finding of probable cause. Because none of the alleged omissions were critical to the finding of probable cause, this is not one of the "very rare case[s]" where "Franks is []applicable to the omission of disputed facts." *Mays*, 134 F.3d at 816.[2]

### IV. CONCLUSION

---

[2] Pamatmat's motion also alleges that the application for the wiretap was drafted in a convoluted and confusing manner which obscured the fact that there was not probable cause. The court does not find the application to be convoluted or confusing; likewise, the court finds that the application was supported by probable cause. This argument is, therefore, without merit.

IT IS ORDERED that Defendant Adolfo Pamatmat's Motion to Suppress Alleged Inculpatory Statements (Dkt. # 909) is DENIED.

s/ Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 9, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 9, 2015, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522