# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case Number: 11-20551-18

ADELFO PAMATMAT,

    Petitioner/Defendant
                                    /

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND SECOND MOTION FOR NEW TRIAL

Before the court are two motions filed by Defendant Adelfo Pamatmat. Following his conviction for conspiracy to distribute controlled substances and health care fraud conspiracy, Defendant filed his Motions for New Trial (Dkt. # 1180) and for Judgment of Acquittal (Dkt. # 1181) on July 16, 2015. The court denied Defendant's Motion for New Trial in its opinion and order entered September 4, 2015. (Dkt. # 1259.) Defendant subsequently filed his Second Motion for New Trial on October 13, 2016. (Dkt. # 1538.) The motions are fully briefed and a hearing was held on May 18, 2017. For the reasons that follow, the court will deny both motions.

## I. BACKGROUND

Defendant is a medical doctor who did contract work with Compassionate Doctors, P.C. ("Compassionate"). (Dkt. # 1164, Pg. ID 8160.) Defendant, along with numerous other doctors, pharmacists, and others, was charged with various offenses relating to a conspiracy to illegally distribute large quantities of prescription pain medication on March 20, 2013. (Dkt. # 187.) In particular, Defendant was charged with

one count of conspiracy to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and 846 and one count of health care fraud conspiracy under 18 U.S.C. §§ 1347 and 1349. On July 2, 2015, Defendant was convicted of all counts. (Dkt. # 1160.) Shortly after, Defendant timely filed the instant motions.

## I. STANDARD

The court may enter a judgment of acquittal if the evidence presented at trial is insufficient to support a conviction. Fed. R. Crim. P. 29. "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, [the court is] limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); citing *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). A court must therefore "draw all available inferences in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998) (citing *United States v. Smith*, 39 F.3d 119, 121 (6th Cir. 1994)). Moreover, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'" *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).

Rule 33 allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Sixth Circuit gives trial courts broad discretion in determining whether to grant a new trial pursuant to Rule 33 because "'[t]he trial judge is in the best position to determine . . . appropriate remedies for any demonstrated misconduct.'" *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *Unite States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)). When a defendant rests his argument for a new trial on the basis of cumulative error, he must show that the "combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)) (finding only harmless error when a trial judge admitted hearsay statements of government agents); *see also Wheaton*, 517 F.3d at 361 (affirming a denial of a motion for new trial because no prejudice resulted from juror's misconduct in which the juror looked at a map to determine the distance between two towns).

### III. DISCUSSION

#### A. Acquittal

Defendant challenges both of his conspiracy convictions: (1) conspiracy to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and 846; and (2) health care fraud conspiracy under 18 U.S.C. §§ 1347 and 1349. Defendant makes the same argument for both counts: the government failed to offer sufficient evidence to demonstrate beyond a reasonable doubt that Defendant was aware of and intentionally entered such conspiracies. (Dkt. # 1181, Pg. ID 8586.) The court disagrees.

3

To establish a drug conspiracy, the government must prove (1) an agreement to violate the drug laws, (2) knowledge of and intent to join the conspiracy, and (3) participation in the conspiracy. *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991). The government need not prove the existence of a formal agreement to establish a conspiracy – proof of a tacit understanding among the parties is sufficient. *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* at 1026 (citing *United States v. Strong*, 702 F.2d 97 (6th Cir. 1983); *United States v. Mendez*, 496 F.2d 128 (5th Cir. 1974)). The government is not required to prove an overt act in furtherance of the conspiracy under section 1346. *U.S. v. Patel*, 579 Fed. Appx. 449, 460 (6th Cir. 2014) (citing *United States v. Shabani*, 513 U.S. 10, 15 (1994)).

Any person who conspires to commit health care fraud may be convicted of a federal offense under 18 U.S.C. § 1349. An individual commits health care fraud by "knowingly and willfully execut[ing] or attempt[ing] to execute a scheme or artifice . . . to defraud any health care benefit program[] or . . . to obtain by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery or payment for health care benefits, items, or services." 18 U.S.C. § 1347(a). A person who commits health care fraud "need not have actual knowledge" of the statute forbidding the conduct "or specific intent to commit a violation" of the statute. 18 U.S.C. § 1347(b). To establish a health care fraud conspiracy under section 1349, the government must prove an agreement between two or more people to act together

4

to commit the offense. *Patel*, 579 Fed. Appx. at 460-61 (citing *United States v. Rogers*, 769 F.2d 372, 379-82 (6th Cir. 2014)).

Evidence linking Defendant to the drug and medicare fraud conspiracy abounds. Defendant indisputably worked for Compassionate, the locus of the conspiracy. (Dkt. # 1181, Pg. ID 8583.) Dr. Ravi Iyer testified that he and Defendant sat in the conference room at Compassionate together and signed stacks of charts (Dkt. # 1556, Pg. ID 15939-40.) Tiffany Walker testified that Defendant held "patient parties" in her home that resulted in illegal controlled substance prescriptions and fraudulent billings. (Dkt. # 1122, Pg. ID 6590-92.) Walker's testimony was corroborated by surveillance officers who witnessed a patient attending a patient party in Detroit, which Defendant billed as a more expensive visit to the patient's home in Harper Woods. (Dkt. # 1556, Pg. ID 16087-95.) Javar Myatt-Jones testified that Defendant received illegal cash payments for signing charts and blank prescriptions for patients he had not actually examined. (Dkt. # 1125, Pg. ID 7029-36, 7160-62.) In fact, Myatt-Jones, while acting undercover, recorded Defendant discussing this conduct. (*Id.*) After he was arrested and read his *Miranda* rights, Defendant orally confessed to his involvement in the conspiracy, including that he had written illegitimate controlled substance prescriptions. (Dkt. # 1453, Pg. ID 12832-38.) This evidence is more than sufficient for a reasonable jury to conclude beyond a reasonable doubt that Defendant participated in scheme with other doctors and employees at Compassionate to write bogus prescriptions and bilk Medicare.

Defendant relies heavily on evidence that he was paid only $20,000 in checks from Sardar Ashrafkhan. (Dkt. # 1181, Pg. ID 8587.) But conspiracy convictions do not

5

require conspirators to have received any particular share of the illicit proceeds. *Patel*, 579 Fed. Appx. at 460-61 (describing the elements of drug and health care fraud conspiracy). Further, the jury heard testimony that Defendant received cash payments for signing charts and blank prescriptions for patients that he had never actually examined. (Dkt. # 1125, Pg. ID 7160-62.) Defendant's argument ignores these cash payments.

Defendant also argues that the government failed to prove beyond a reasonable doubt that Defendant acted outside the usual standard of care and without a legitimate medical purpose. (Dkt. # 1181, Pg. ID 8587-88.) Specifically, Defendant argues that the government's expert witness failed to "articulate the standard of care" and the government, therefore, could not prove beyond a reasonable doubt that Defendant violated that standard of care. (*Id.*) To support his contention that the government's expert needed to "articulate the standard of care[,]" Defendant quotes *U.S. v. Volkman*, 736 F.2d 1013, 1023 (6th Cir. 2013). But *Volkman* stands for a very different proposition: experts may opine about whether particular physicians acted without a legitimate medical purpose in a specific instance without running afoul of the general prohibition on witnesses offering legal conclusions. *Id.* Nothing in *Volkman* suggests that witnesses are required to elucidate a formal standard. Indeed, setting the exact language of such a standard is more properly the role of jury instructions.

The government's expert opined that Defendant acted outside the course of legitimate medical practice in a variety of specific ways that demonstrated a lack of a good faith effort to comply with the standard of medical practice generally recognized in the United States and the jury was instructed that it could accept or reject his opinion

6

testimony. (Dkt. # 1454, Pg. ID 12977-87; 12060-61.) Given the verdict, the jury presumably agreed with the government witness's opinion.

### B. New Trial

Under Federal Rule of Criminal Procedure 33, "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Ineffective assistance of trial counsel such that a defendant's Sixth Amendment right to counsel is violated constitutes a "substantial legal error" that warrants a new trial. *United States v. Munoz*, 605 F.3d 359, 373-74 (6th Cir. 2010). To show that his trial counsel was unconstitutionally defective, Defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This standard requires Defendant to show first that "counsel's representation fell below an objective standard of reasonableness" and (3) that "counsel's performance [was] prejudicial to the defense[.]" *Id.* at 688, 692.

Defendant argues that his trial counsel was unconstitutionally defective in several ways: by not investigating the "raw data" relied upon by government witness Scott O'Donnell; by not presenting a witness to challenge O'Donnell's testimony; by not presenting evidence of Defendant's hospitalization; and by not timely notifying the government of Defendant's handwriting expert, causing the court to exclude some of the witness's planned testimony. (Dkt. # 1538, Pg. ID 15611.) The court disagrees.

Defendant's arguments concerning O'Donnell focus on the alleged failure of trial counsel to investigate and challenge O'Donnell's testimony and prepared exhibits based on Michigan Automated Prescription System ("MAPS") data. (Dkt. # 1538, Pg. ID

7

15623-25.) Defendant does not point to evidence that the data were falsified. Instead, Defendant questions the veracity of the MAPS data by arguing that the original prescriptions are kept at the pharmacies, some of which were complicit in the conspiracy. (Dkt. # 1538, Pg. ID 15623-24.) Defendant also argues that the prescriptions were filled while Defendant was hospitalized, ostensibly demonstrating either that the prescriptions were forgeries or the data are unreliable. (*Id.*)

First, the court has already heard and rejected the argument that the MAPS exhibits were inadmissible because they were prepared by complicit pharmacies. (Dkt. # 1455, Pg. ID 13119.) Trial counsel did object to the admission of the MAPS exhibits at trial. (*Id.*) The court overruled the objection, finding the data admissible as a business record under Federal Rule of Evidence 803(6). (*Id.*) The government has since provided the underlying data to Defendant. (Dkt. # 1552, Pg. ID 15797.) Defendant argues that trial counsel's failure to procure the underlying data prevented trial counsel from pursuing a line of questioning clarifying the actual number of prescriptions as opposed to the number of dosage units prescribed. (Dkt. # 1538, Pg. ID 15616-17 (quoting Dkt. # 1456, Pg. ID 13321).) But nowhere does Defendant explain why the inability to pursue that line of questioning was actually prejudicial to the defense, let alone "so prejudicial as to render the trial fundamentally unfair." *Trujillo*, 376 F.3d 614; *Strickland*, 466 U.S. at 686.

Second, Defendant's conclusion that evidence that Defendant was hospitalized would have necessitated the exclusion of the MAPS exhibits is unjustified. (Dkt. # 1538, Pg. ID 15625.) Rather than showing that the prescriptions were forgeries, the fact that prescriptions were filled while Defendant was hospitalized could also be explained by

8

the testimony that Defendant signed blank prescriptions and prescription pads in conjunction with Myatt-Jones. (Dkt. # 1125, Pg. ID 7029-36.) Contrary to Defendant's assertions, Myatt-Jones testified that he had never forged Defendant's signature on a prescription. (Dkt. # 1538, Pg. ID 15614; Dkt. # 1134, Pg. ID 7410-11 (In response to defense counsel's question, "And you never forged [Defendant's or Ali Malik's] name, did you?" Defendant testified, "No, never.")) Importantly, despite having the underlying data, Defendant offers no argument to undermine the data's credibility that was not available at trial.

The court is similarly unmoved by Defendant's argument regarding Defendant's handwriting expert, Wendy Carlson. Defendant overstates the agreed-to remedy for trial counsel's late disclosures. Defendant was not "precluded from arguing that the Government never proved that the signatures on the patient files and prescription pads were [Defendant's]." (Dkt. # 1538, Pg. ID 15618.) Rather, trial counsel agreed not to reference the government's failure to produce its own handwriting expert and, should Defendant have made such a reference, the jury would be instructed that the failure was the result of Defendant's late disclosures. (Dkt. # 1458, Pg. ID 13722.) Defendant was not precluded from arguing that some or all of the signatures were forgeries and Carlson was allowed to give her opinion on nineteen exhibits. (*Id.*) The jury was free to reject Carlson's opinion testimony. Defendant offers no reason why allowing Carlson to testify as to her opinion on more documents would make her opinion more persuasive to the jury.

Even assuming arguendo that trial counsel erred by declining to investigate the underlying MAPS data and securing a handwriting expert at the eleventh hour, any such

errors are of no substantial significance. To justify the extraordinary remedy of a new trial based on cumulative error, Defendant must show that show that the aggregate effect of the "individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *Trujillo* 376 F.3d at 614. Given the weight of the evidence against Defendant, including his oral confession, the court is not persuaded that his retained trial counsel's arguably sub-optimal performance actually prejudiced Defendant to that degree.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's Motion for Judgment of Acquittal (Dkt. # Dkt. # 1181) and Second Motion for New Trial (Dkt. # 1538) are DENIED.

  s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: May 23, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 23, 2017, by electronic and/or ordinary mail.

  s/Lisa Wagner  
Case Manager and Deputy Clerk  
(810) 292-6522